**Corenna TAYLOR**

v.

**James H. JONES.**

**No. LR–76–C–90.**

United States District Court, E. D. Arkansas, W. D.

Feb. 21, 1980.

On Various Motions April 11, 1980.

On Motions to Dissolve Injunction May 8, 1980.

John Walker, Richard Quiggle, Little Rock, Ark., for plaintiff.

David L. Williams, Asst. Atty. Gen. for the State of Arkansas, A. Doug Chavis, Asst. U. S. Atty. for the Eastern District of Arkansas, Little Rock, Ark., Peter B. Loewenberg, Dept. of the Army, Washington, D. C., for defendant.

ARNOLD, Circuit Judge, Sitting by Designation.

Feb. 21, 1980

The Court makes the following findings of fact and conclusions of law.

The Court has jurisdiction of the case under Sections 1331 and 1343 of Title 28 U.S. Code because the claims asserted by the Complaint arise under Title 7 of the Civil Rights Act of 1964, and 42 U.S.C. Section 1983. This is not a class action, as counsel for defendant has pointed out. Although class allegations were contained in the Complaint, no motion for class certification was ever filed. The Court is, therefore, unable to make the findings required by Rule 23. The case has been tried as an individual action, and it is an individual action. A good many of the facts are stipulated, and those that are not stipulated have been presented to the Court in the main with candor on both sides, and the picture that emerges is unusually clear for cases of this kind.

The Court, as indicated at the beginning of the trial, has substituted General Jimmie "Red" Jones as the named defendant. As Adjutant General of the State of Arkansas he has administrative supervision over both Federal and State employees who work in the Arkansas Military Department. He is the appointing authority for both Federal and State employees and, therefore, is ultimately responsible for hiring, firing, and other personnel actions.

The distinction between Federal and State employees, in the Court's judgment, is not relevant for Title VII purposes.

The plaintiff in this case, Mrs. Corenna Taylor, was first employed by the Arkansas National Guard in March of 1974. From March through June 30, she served as a

recruiter. At that time she was terminated, that is, at the end of June as a recruiter, her contract expired, her enlistment, if you will, expired, and beginning on July 1, 1974, she began work in the mail room. She worked there until her resignation became effective on October 2, 1974.

She filed a timely charge with the Equal Employment Opportunity Commission and duly received a notice of right to sue. The jurisdictional and administrative prerequisites for the exercise of this Court's powers have, therefore, been fulfilled.

The Court lays to one side the claim that there may be a violation of Title VII on a disparate-impact theory. The Court does not believe that the proof justifies that with respect to this individual plaintiff. That is not to say that there are not other individuals who might have a viable disparate-impact claim, but they are not before the Court. The Court addresses itself exclusively to the disparate-treatment theory, and that theory is based upon discrimination as to race, not as to sex, there having been no claim in the Complaint of sex discrimination.

■ The first issue that the Court must address is whether or not a prima facie case of disparate treatment was made. In that regard the Court finds that the first black person hired by the defendant was hired in 1971, that up until that time there had been a history of purposeful and deliberate racial discrimination on the part of the State of Arkansas generally as an employer, and specifically on the part of the Military Department.

Since that time the number of blacks employed by the Arkansas National Guard has risen to no more than two per cent, that is, there are about 1100 employees federal and state, and there are no more than about eighteen black employees. This number is contrasted with the number of blacks in the general population in the State, which is no less than sixteen per cent, or was no less than sixteen per cent in 1970, the last census that we had. It also contrasts with the percentage of blacks who are members of the National Guard, and that figure is between twenty and twenty-three per cent.

The blacks that were hired by the Military Department have been in the lower level jobs. No black person, with the exception of one in West Memphis, has ever held a supervisory position. The racial atmosphere at the Arkansas Military Department has been in a word, "dismal".

The Court specifically credits the testimony of the plaintiff, of Mr. Hale, of Mr. Person, of Mr. Watson, and of Colonel Burdell, that the racial atmosphere has left much to be desired. There were slurs, epithets, and jokes. On one occasion an employee who said he was a member of the Ku Klux Klan actually hung up a noose in one of the places of business. The message conveyed or attempted to be conveyed by that action was unmistakable.

The Court agrees that the employer is not automatically responsible for the acts of employees, however reprehensible they may be. The Court also agrees that there is, in some sense, a right to be prejudiced, that is, the law doesn't control people's thoughts and cannot, and the Court knows of no injunction of other legal process that can command people to think differently.

The fact remains, however, that the atmosphere of racial discrimination and of prejudice was so pervasive and so long continuing in this Department of State Government that the employer must have become conscious of it, yet he took no significant action to correct it, even up until the present time.

There was, therefore, a prima facie case of disparate treatment made out.

Under the law the burden shifts to the defendant to articulate some legitimate or nondiscriminatory reason for the treatment of which the plaintiff complains, and the plaintiff in this case complains essentially of two kinds of treatment. She says that she was transferred from the recruiting position to the mail-room position because of her race, and she says that she was, in effect, constructively discharged from the mail-room position because of her race.

With regard to the demotion or the transfer from recruiter to mail-room clerk, no proof whatever has been offered as to the reason for that action.

This is an unusual case, then, in which the plaintiff must prevail upon her disparate treatment-claim with regard to the termination of her recruiting position simply because the burden of producing evidence on the part of the defendant has not been carried.

With regard to her resignation, the Court finds that it was forced by the racial atmosphere existing in this Department; that she stayed as long as any self-respecting black person could have been expected to stay; and, specifically that a white woman in her position would not have been treated in the same fashion.

On the case as a whole of course, the plaintiff has the burden of persuading the trier of fact. She has done so. The Court finds that she was treated as she was because of her race and that this treatment was deliberate and conscious on the part of the defendant that Title VII has been violated, and that 42 U.S.C. Section 1983 has also been violated.

With regard to relief, the plaintiff is entitled to back pay and to reinstatement. The reinstatement should be to a comparable position. The Court assumes that there will be no retaliation or harassment against the plaintiff or any of the witnesses in this case. Whether it is necessary to put that provision in a decree, the Court has not decided as of now.

With respect to back pay she is entitled to the difference between what she actually earned since October 2, 1974, and what she would have earned had she remained in the recruiting, the higher paid position. It may be that Mrs. Dorothy Hanger is an appropriate yardstick for determining what she would have earned, but the Court is not making a specific finding on that point at this time.

There need to be further submissions by the parties on the points of, Number One, what amount of money plaintiff has earned since October 2, 1974; Number Two, what amount she would have earned had she remained in the recruiting position. In that regard, defendants may be able to show that some other employee is a more comparable person for relevant purposes, and may then agree on a comparable position to which she ought to be reinstated. The plaintiff should make a submission on those questions on or before March 3; the defendants should respond on or before March 13. The monetary awards that will be included in the judgment will, of course, be against the Defendant Jones in his official capacity only and not individually.

The final judgment will also contain an injunction forbidding any future violations of Title VII or Section 1983 by the Military Department either with regard to federal or state employees.

The further submissions of the parties should also address the issue of costs and attorney's fees. Under 42 U.S.C. § 1988, the plaintiff is entitled to recover costs and attorney's fees. The Court, in the exercise of discretion, finds that those costs and fees should be awarded. The amount will depend upon the authorities and the factual showings that I am sure counsel are familiar with. The submission made by the plaintiff on March 3 should include the customary showings with regard to time expended and out-of-pocket costs. The defendants are then at liberty to reply and to show, if they can, that the time was unnecessarily expended or the amount of money claimed as an hourly rate is unreasonably high.

As to the question of further equitable relief, the Court is most reluctant to set quotas for this Department or for any other employer, and would like to avoid it. It is not clear that it can be avoided. This may be a case where that remedy is the only practical recourse in view of the history of this Department. The Court at this time is not determining that issue, but the defendant is from this day forth enjoined and forbidden from hiring any new persons in any position until the 1st of April, 1980. The reason for that order, obviously, is to

prevent the options as to a hiring order in the future being foreclosed by the hiring of persons in the interim, thus taking up all of the available vacancies. If this order would work an unreasonable hardship on the defendant, if a specific showing can be made that a military objective would be hindered by this order, the defendant is at liberty to make a motion to set it aside with an appropriate showing.

The further submissions that are made by the parties on March 3 on the part of the plaintiff and on March 13 on the part of the defendant should address the question of further equitable relief; whether or not it is appropriate, and if so, what it should be. By far the better way for this to be handled is for the defendant voluntarily to submit some kind of plan. The Court doesn't want to run the hiring practices of the Military Department, or of any Department, and the defendant and his counsel are urged to address themselves to this problem on an urgent basis, so that, if possible, further involvement of the Court in the administration of this Department can be avoided.

## ON VARIOUS MOTIONS

### April 11, 1980

On February 21, 1980, after a two-day trial in this individual action, the Court announced findings of fact and conclusions of law from the bench. In brief, the Court found that the plaintiff had held two jobs with the Arkansas National Guard, of which the defendant is Adjutant General. Plaintiff was, for ninety days, a National Guard recruiter, following which she served as a mail-room clerk for several months. The Court found that her employment as a recruiter had been terminated because of her race, and that her resignation as mail-room clerk was in fact a constructive discharge, again for unlawful racial reasons. The Court noted that the defendant[1] had not had any black employees until 1971, and that his black employment had never been in excess of two per cent. The Court found that the Arkansas National Guard had intentionally discriminated on the basis of race over a long period of time, that the racial atmosphere among employees was dismal, and that this atmosphere was so pervasive that it had to be known at least to some of the officials in charge of managing the Guard.

On the basis of these findings, the Court concluded that the defendant had violated both Title VII of the Civil Rights Act of 1964, as amended to include state employees in 1972, and 42 U.S.C. § 1983. The Court directed the parties to submit memoranda on appropriate relief, including the amount of back pay that plaintiff should receive, attorney's fees, and equitable relief. The Court indicated that the final judgment in this case would instruct defendant to reinstate plaintiff in her original position, National Guard recruiter, and that back pay would be measured by the difference between what she had actually earned since leaving the Guard, and what she would have earned had she remained in the recruiter position. The Court also directed the defendant not to hire any new employees until April 1, 1980.[2] Employment opportunities, the Court felt, should be kept open so that, if general equitable relief were granted, it would have some scope within which to operate effectively. Plaintiff was given until March 3, 1980, to submit her memorandum, with defendant to

1. As the complaint in this action was originally filed, the named defendant was "The Arkansas Army National Guard." At the beginning of the trial, the Court on its own motion substituted James H. Jones, who is now Adjutant General of the National Guard, as the named defendant. General Jones has been in charge of the Arkansas National Guard for only a small portion of the total time period covered by the evidence in this case. He had no connection with the National Guard during the time of plaintiff's employment. The Court has not found that General Jones is personally at fault. The problem is systemic, not individual.

2. On April 2, 1980, this restraint was extended until further order of the Court. The order of extension was effective, *nunc pro tunc*, as of March 31, 1980. Both sides had been granted extensions of time until April 7, 1980, to file briefs on certain issues, and the Court wanted to consider these briefs before making any further rulings.

have until March 13, 1980, within which to respond.

On February 22, 1980, a written order embodying the findings made the previous day, and the directions given from the bench, was signed.

On February 27, 1980, and March 6, 1980, the Court granted motions by the defendant for modification of its decree prohibiting hiring. Five persons with whom contracts of employment had already been made were permitted to be hired. These orders were entered over the objection of plaintiff.

On March 4, 1980, plaintiff filed her memorandum on relief and remedies, having previously obtained a one-day extension. The memorandum requested, in addition to general affirmative equitable relief, back pay for plaintiff, with an award of pre-judgment interest, and attorney's fees.

On March 7, 1980, defendant filed a motion for new trial or, in the alternative, to alter or amend the judgment. Defendant also asked the Court to stay all proceedings or, in the alternative, for an extension to March 21 within which to respond to plaintiff's submission of March 4. Proceedings were not stayed, but the Court did grant defendant an extension within which to respond to plaintiff's memorandum with respect to relief. This extension, initially granted to March 21, 1980, was later extended to April 7, 1980. Defendant did not file his memorandum with respect to relief until April 10, 1980, but the Court has nevertheless read and considered it.

On March 7, 1980, the United States filed a motion for reconsideration, for stay, and for amendment of the order of February 22, 1980. The United States, which has never been a party to this suit, claims that the decree affects federal interests, in that it imposes controls on defendant in his capacity as appointing authority for federal employees. The United States argues, among other things, that it is unfair for such a decree to be entered in a proceeding to which it was not a party and after a trial at which it was not present.

The motion of the United States is denied. It has never been a party to this case. It has never sought to become a party to this case. Even its most recent motion does not ask for leave to intervene as a party. As a non-party, the United States has no standing.

The arguments made in the motion of the United States will nevertheless be considered. The motion will be treated as a brief *amicus curiae.* The Court takes this action *sua sponte* because of the importance of the legal questions presented, because the United States attempts to assert an interest in its sovereign capacity, and because the named defendant appears to be adopting the contentions that the United States has made in its motion. On consideration of the arguments made by the United States on their merits, the Court holds that they are not persuasive. The order entered in this case does not control the actions of anyone but the named defendant who is an officer and employee of the State of Arkansas. It is true that certain of defendant's employees, most of whom are known as National Guard technicians, are referred to as "federal employees," and that they are paid with federal funds. It is also true that many of them hold military rank and are military personnel on full-time duty with the armed forces of the United States. On the other hand, nothing that the Court has done affects military rank or status as such. No relief that has been granted up to now, and none that will be effective in the future, requires defendant to hire anyone for any position as a National Guard technician unless that person meets all of the qualifications for that position laid down in federal statutes, regulations, and manuals. The Court will not direct the defendant to confer military rank or status on anyone. Its order governs only decisions of defendant to employ persons, some of whom may be required by federal law or regulations to hold military rank. Whether these persons are "state employees" or "federal employees," it remains true that the named defendant in this action has the authority to hire them or not. It is this authority that is governed by the Court's order.

■ The motion of defendant for new trial or, in the alternative, to alter or amend the judgment, remains to be considered. Defendant claims that it was surprised by the plaintiff's request, and the Court's direction, that plaintiff be reinstated as a National Guard technician. Defendant points out that the complaint in this case did not refer at all to the National Guard technician position. The complaint simply alleged that plaintiff had been employed as a mail-room clerk, and that she had been subjected to racial slurs "while holding this position." Similarly, the pre-trial stipulation refers only to the position of mail-room clerk. It says nothing about the previous, federal position that plaintiff had held while an employee of defendant. Neither the complaint nor the pre-trial stipulation lists among the items of relief requested reinstatement of plaintiff to the National Guard technician job. The witness list submitted along with the pre-trial stipulation does refer to "racial discrimination as pertaining to [plaintiff's] . . . initial employment as a National Guard recruiter and as a mail-room clerk," but defendant reasonably understood this reference not as a claim that plaintiff's termination as a recruiter was in itself unlawful, but simply as notice that defendant's conduct with respect to this termination might be offered as relevant evidence in connection with plaintiff's claim that her termination as mail-room clerk had been unlawful. The distinction is an important one. Under the circumstances, the Court believes that defendant's claim of surprise is well-founded, and that it would not be equitable, on this record, to require defendant to reinstate plaintiff as a National Guard technician, or to measure her entitlement to back pay by the pay that she would have received had she remained in the technician position.

This leaves the Court with a choice. It could either order a new trial or simply amend the judgment to require plaintiff's reinstatement as a mail-room clerk, and to measure her entitlement to back pay by the pay that she would have received had she remained in the position of mail-room clerk. Altering or amending the judgment in this manner would eliminate any prejudice that defendant might be suffering because he was unfairly surprised at the trial. The Court found that plaintiff was constructively discharged as mail-room clerk for unlawful racial reasons. She is thus entitled, at the least, to reinstatement in this position and commensurate back pay. On the other hand, for the Court simply to alter the relief granted at this point might be unfair to plaintiff. She made out a strong *prima facie* case with respect to her termination as a recruiter, and it is possible that she would be entitled to reinstatement in this position even if defendant, after fair notice, were given an opportunity to introduce additional evidence to rebut this claim.

The Court believes that a fair solution to this problem may be found by analogy in the practice applicable to remittiturs. The motion for new trial is therefore granted, provided, however, that if plaintiff voluntarily agrees to the entry of a decree reinstating her in the position of mail-room clerk, and to the entry of a judgment awarding back pay to her based upon the salary she would have earned in this lesser position, the motion for new trial will be denied. Counsel for plaintiff will file a pleading indicating her choice on or before April 28, 1980. If her election is to accept the lesser relief, she shall at the same time as this election is made, make a written submission to the Court detailing the amount of back pay she believes appropriate as an incident of her reinstatement as a mail-room clerk. If plaintiff makes such a submission, defendant may have until May 8, 1980, to respond to it. Plaintiff's submission should also bring up to date any expenses and attorney's fees for additional time expended in connection with the case. In this event, the Court will then proceed to determine the appropriate amount of back pay and attorney's fees, and enter a judgment in accordance with the evidence.

If, on the other hand, plaintiff does not, on or before April 28, 1980, file an election to accept this lesser relief, defendant will be permitted to reopen his case for the sole purpose of offering a defense to the claim

that he unlawfully terminated the plaintiff's employment as a National Guard technician. In this event, this Court will set a date for what will, in effect, be a continuation of the trial, after consultation with counsel for both sides. If the United States wishes to move for leave to intervene to participate in this continuation of the trial, the Court will entertain such a motion. If the motion is granted, the United States may participate without prejudice to the jurisdictional defenses it asserts in its memorandum. The mere fact of moving to intervene, in other words, will not be taken by the Court as a waiver of these defenses. They may be asserted, and will be ruled on by the Court, if the motion for leave to intervene is granted.

A word of clarification should be added. The injunction against hiring is still in effect, and will remain in effect until further order of the Court. Even if the relief granted her ultimately extends only to her state position, the injunctive relief entered may ultimately include all employment by defendant, whether in "state" or "federal" positions. An individual claim that has merit, even though it directly relates only to one position of employment, is a proper basis for equitable relief under Title VII with regard to all of a defendant's employment practices. After the record is closed, the Court will consider what affirmative equitable relief, if any, is appropriate.

## ON MOTION TO DISSOLVE INJUNCTION

### May 8, 1980

On May 2, 1980, the Court received the motion of defendant to dissolve, stay, or modify the injunction against hiring presently in effect. At the request of defendant, the time for response to this motion was shortened from ten days to six. The Court has now considered the motion, supporting affidavits and documents, and the opposition of plaintiff, filed on May 8, 1980.

The injunction forbids any hiring by defendant without further order of the Court, and pending the Court's determination, following the partial new trial previously

granted, of what affirmative equitable relief, if any, should be granted. At the first part of the trial on February 20 and 21, 1980, the Court found that the defendant agency had been guilty of a long history of persistent racial discrimination, the effects of which are still being felt at this time. No black person was employed by the Arkansas National Guard until 1971. Among members of the Arkansas National Guard, between 20 and 23% are black, but only two per cent of the persons employed by defendant are black. In view of this history, the Court thought it likely that, if defendant were permitted to continue hiring new employees, the overwhelming majority of them would be white, thus making it more difficult for any affirmative relief, expressed in terms of hiring goals, to be effective in the future. The injunction, however, expressly provided that it could be modified on a proper showing, and, as a matter of fact, the Court has previously modified the injunction to permit the hiring of five white employees whom defendant had agreed to hire before the Court announced its order.

Defendant now asks that the injunction be dissolved or stayed at least until the partial new trial. The equities that the Court must weigh in considering this request can be better understood if the present procedural situation is placed in context. First, the new trial that has been granted is partial only. Defendant will be permitted to produce evidence of a legitimate and nondiscriminatory justification for the termination of plaintiff's service as a recruiter. If defendant does produce such evidence, plaintiff will be permitted to produce evidence that the reason profered is in fact only a pretext. The Court will then decide whether defendant's termination of plaintiff as a recruiter was unlawfully influenced by a racial motive. Even if the Court resolves this issue in favor of defendant, the previous finding, that plaintiff's later departure from the employ of defendant was a constructive discharge for unlawful racial reasons, remains in effect. So do all the other findings that the Court made at the time of the first trial, including the

historical conduct of defendant, the degrading atmosphere in which employees of defendant have been expected to perform their tasks, and the statistics showing the percentage of minority employment. In this situation, however the issue of plaintiff's termination as a recruiter goes, this Court has still held that she was unlawfully terminated as a mail-room clerk, and the likelihood that some affirmative equitable relief will be granted is substantial. The situation is different from that which would obtain if a total new trial had been granted. In that event, the case might well be analogized to that of a preliminary injunction entered before any testimony, or at least any plenary testimony, had been heard. Here, two days of trial have already occurred, and the Court has a substantial basis in the record for forecasting the likelihood of affirmative equitable relief.

In addition, the length of time involved is not great. The partial new trial has now been set for May 29 and 30, 1980. Denial of defendant's motion would thus mean only that the present restraint would remain in effect for 20 more days. Whatever relief, if any, may be ordered at the conclusion of the partial new trial will, of course, be in the nature of a permanent injunction, not, as is presently the case, an injunction *pendente lite*.

■ Against this background, we turn to an examination of the specific showing made by the defendant. He asks that he be allowed to fill 34 specific positions, 26 of which, it is said, will be irrevocably lost if not filled by May 30, 1980. These latter 26 positions, it is alleged, will be re-allocated to other states if not filled by the end of this month. In addition, defendant avers that five armories are now closed because of this Court's restraint against hiring.[1] No claim is made that defendant has even attempted to recruit black applicants for any of these allegedly critical positions. There is no allegation that defendant has request-

ed the National Guard Bureau to extend it deadline, to make an accommodation, in other words, to the public interest in nondiscriminatory hiring, an interest that the National Guard Bureau acknowledges. See Exhibit C to the motion, p. 5–1.

In this situation, the Court is not persuaded that defendant has made a sufficiently strong showing to justify dissolution or stay of the injunction in its entirety. No doubt some hardship is being experienced, and the operations of defendant's agency are not so smooth, in an administrative sense, as they would be absent the restraint imposed by this Court. There is a strong public interest in the proper functioning of the National Guard and the Arkansas Military Department. But there is an even stronger public interest in the enforcement of the Constitution and laws of the United States. We are involved here not merely with a statute (Title VII of the Civil Rights Act of 1964) that was made applicable to local governments in 1972. The Fourteenth Amendment to the Constitution itself is implicated, and there can be no higher public interest than obedience to the Constitution. The conduct of the defendant agency, over a long period of years, has violated not only Title VII of the Civil Rights Act of 1964, but also 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment. For the defendant to be subjected to a restraint against hiring designed to protect this Court's ultimate equitable jurisdiction, when this restraint is only to last 20 more days, is not such a showing of hardship, in this Court's view, as will justify a complete dissolution or stay of the injunction, especially in the light of certain modifications in the injunction which the Court is willing to grant, and which will avert some of the adverse effects claimed by defendant.

One of the positions that defendant wishes to fill is the position of Equal Oppor-

---

1. The moving papers do not unequivocally support this allegation. The affidavit of defendant himself, attached to the motion as Exhibit A, states that the five armories mentioned in defendant's memorandum are closed "in es-

sence," and that "normal functions are being done piecemeal at best." The affidavit of Lt. Col. Charles S. Rowland, on the other hand, Exhibit F. states that armories in *four* towns ". . . are closed."

tunity Specialist within the office of the Adjutant General. A black captain is in line for this position. The injunction is modified to permit this individual to be hired. Employment of this person will advance the goal of equal opportunity.

There are also four full-time recruiter positions now open, one each in Hope, Fayetteville, Jonesboro, and Little Rock. This position is apparently comparable to that held by plaintiff at the time she was terminated in June of 1975. If defendant wishes to hire plaintiff for one of these positions, he may do so, and the injunction is modified to that extent.

Three vacancies in the Arkansas Air National Guard are said to be essential to the Air Guard's mission as a supporting group for the Strategic Air Command. The Court accepts the statements to this effect in the affidavits of Lt. Col. Jacob L. VonPelt, Exhibit U, Maj. James E. Jones, Exhibit V, and Charles F. Wood, Exhibit W. The injunction is modified to permit defendant to hire persons for these three positions. The filling of these positions is directly related to national defense. A special situation exists in which it is appropriate to apply the maxim, *"Inter arma silent leges."*

The request for modification of the injunction is denied in all other respects, except that defendant may hire any one he pleases if half the persons hired are black. *Cf. Firefighters' Institute for Racial Equality, Inc. v. City of St. Louis*, 8th Cir., 616 F.2d 350, 1980, *reh. denied and opinion amended*, April 9, 1980. Such a provision is comparable to the affirmative equitable relief, or at least to one feature of it, that plaintiff requests, and allowing defendant to put on additional employees in this fashion will not be inconsistent with any future equitable relief that the Court may decide to order after the partial new trial.

The motion to dissolve the injunction is denied. The motion for stay of the injunction is denied. The motion for modification of the injunction is granted, but only to the extent specifically set forth in this order. In all other respects, it is denied.